# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PAUL and MARIANNE BONFIGLIO, )
 )
   Plaintiffs, )
 ) No. 14 C 9254
   v. )
 ) Judge Sara L. Ellis
CITIFINANCIAL SERVICING, LLC, )
GREEN TREE SERVICING, LLC, )
and RANDALL S. MILLER & )
ASSOCIATES, PC, )
 )
   Defendants. )

## OPINION AND ORDER

Although Defendant Citifinancial Servicing, LLC ("Citi") advanced funds to pay

Plaintiffs Paul and Marianne Bonfiglio's (the "Bonfiglios") delinquent property taxes from their

refinanced mortgage, it never actually redeemed those taxes. This set into motion a series of

events ending in a final eviction notice for the Bonfiglios. The Bonfiglios have sued Citi, Green

Tree Servicing, LLC ("Green Tree"), the loan servicer, and Randall S. Miller & Associates, PC

("Miller"),[1] the law firm that filed the eviction action, for violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.*, the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and other state law claims.

Miller and Green Tree have moved to dismiss all claims against them [9, 33]. Because Miller's

actions as pleaded do not qualify as debt collection under the FDCPA, Miller's motion is granted

and Count V of the Complaint is dismissed. Because the fraud claims against Green Tree are

pleaded with sufficient specificity, Green Tree's motion to dismiss Counts II and III is denied.

---

[1] Miller states that it was incorrectly sued as "Randall S. Miller & Associates, PC" and should have been sued as "Randall S. Miller, LLC." Doc. 9 at 1.

Because the Bonfiglios do not allege harassing or oppressive conduct on the part of Green Tree, or that Green Tree designed, compiled, or furnished a deceptive form, the Court dismisses the § 1692d and § 1692j FDCPA claims against it, but because the other FDCPA claims are sufficiently pleaded, the rest of Count IV remains.

## BACKGROUND[2]

On March 12, 2007, the Bonfiglios refinanced their mortgage with Citi on their primary residence, the subject property, in the amount of $159,766.55 ("loan" or the "subject loan"). The Bonfiglios paid property taxes separately from their loan (i.e. there was no tax escrow), and fell behind on their property tax payments. The taxes became delinquent in 2008. These delinquent taxes were sold in November 2009 to RealTax Developers, Ltd. ("Real Tax"). The amount to redeem the taxes was $34,893.45 and the redemption period expired on November 2, 2012.

After the 2009 tax sale, but before the end of the redemption period in 2012, the Bonfiglios called Citi for help in paying the taxes. Citi agreed to redeem the taxes and add the amount advanced to the end of the loan. On August 13, 2012, before the end of the redemption period, Citi sent the Bonfiglios a letter confirming that it had paid the taxes. But Citi had not paid the taxes. It did charge the loan $33,236.77 for those taxes, however. The Bonfiglios relied on Citi's letter and continued to make payments on their loan. The Bonfiglios thought that they had fulfilled their obligations in regard to the delinquent taxes and now only owed Citi, not RealTax or the city, for those taxes.

On November 30, 2012, the Circuit Court of Will County ordered the clerk to issue a tax deed. On April 15, 2013, the Will County Clerk issued a tax deed on the subject property to

---

[2] The facts in the background section are taken from the Bonfiglio's Complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Miller and Green Tree's motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Intern. Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

RealTax.  This conveyed full title to RealTax, extinguishing all prior liens and title, including the subject mortgage by Citi.  This also converted the loan from an *in rem* interest to an *in personam* interest against the Bonfiglios.

Citi and Green Tree did not notify the Bonfiglios that the mortgage had been extinguished by the tax deed.  Still believing the mortgage was valid, the Bonfiglios continued to make their monthly payments.  On the same day, Green Tree sent the Bonfiglios a notice that it was the new servicer of the loan for Citi, effective May 1, 2013.  Green Tree sent monthly statements to the Bonfiglios requesting payment on the loan to avoid foreclosure, as if Citi had a valid mortgage lien on the property.

On July 16, 2013, RealTax conveyed the deed to the property to Regions Bank as Trustee for Trust No. 90-P015-00.  The trust deed was recorded on September 3, 2013.

On October 15, 2013, the Bonfiglios received a notice from Green Tree stating that the subject loan "was sold on October 1, 2013.  It is now owned by CITIFINANCIAL SERVICING, LLC. The sale does not change the terms of your loan or *your contractual obligations as described in your mortgage loan documents* . . . The servicer of your loan has not changed and continues to be Green Tree Servicing LLC."  Compl. ¶ 29.

Green Tree called the Bonfiglios on behalf of Citi, claiming that the Bonfiglios were behind on the monthly payments.  But the Bonfiglios had been making the monthly payments. On November 18, 2013, the Bonfiglios called Green Tree to discuss the alleged default.  Green Tree stated the Bonfiglios owed Citi the amount advanced for the property taxes.  Green Tree offered to defer the amount advanced for taxes to the end of the loan and to deem the loan current.  Green Tree sent the Bonfiglios a letter on November 19, 2013 memorializing this conversation, stating that the loan was current on November 18, 2013, and deferring any past due

amount to the end of the loan. The letter specifically stated that if funds were advanced for taxes, payments previously posted to interest were reallocated to bring the account current. The Bonfiglios state that they relied on these representations by Green Tree and Citi, and continued to make monthly payments believing the taxes had been paid and the loan was current.

In the meantime, Citi had made arrangements to purchase the deed to the subject property from RealTax in order to protect its interest. On December 10, 2013, Citi purchased the trust deed to the property from Regions Bank. On December 12, 2013, Green Tree sent the Bonfiglios another notice confirming that past due amounts on the loan had been deferred. The Bonfiglios plead that this letter implied Citi still had a valid mortgage on the property.

On February 18, 2014, Green Tree rejected the Bonfiglios' monthly payment without explanation. Green Tree and Citi sought to evict the Bonfiglios from the property. On March 4, 2014, through Miller, their attorney, Green Tree and Citi filed the eviction in the name of the prior owner, Regions Bank. The Bonfiglios appeared in court to question and contest the eviction. Miller gave the Bonfiglios no information about the case. The case was set for trial on May 8, 2014. Prior to the trial and the entry of any order of possession, Green Tree or Citi directed the sheriff to evict the Bonfiglios and their children from the property. The sheriff visited the property at least twice to direct the Bonfiglios to leave and served the final eviction notice in late May 2014. A representative of Green Tree and Citi also visited the Bonfiglios at that time and informed them that the property should be vacated immediately.

On June 3, 2014, the Bonfiglios hired counsel. On June 11, 2014, Miller dismissed the eviction as erroneously filed in the name of Regions Bank. The Bonfiglios had been making payments to Citi and Green Tree for over two years based on the understanding that Citi had paid the delinquent taxes on their behalf and retained a valid mortgage.

The Bonfiglios plead as damages extreme emotional distress, mental anguish, loss of sleep, health issues, including the exacerbation of pre-existing conditions, anxiety, continuing fear of eviction, and attorneys' fees and costs to defend against the eviction.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case. *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

### I.    Miller's Motion to Dismiss

Miller moves to dismiss the only Count pleaded against him, Count V, that asserts violations of the FDCPA, specifically §§ 1692d, 1692e, 1692f, and 1692j. Miller first moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the Bonfiglios have failed to sufficiently plead any element of standing. Miller also states that the *Rooker-Feldman* doctrine bars the Bonfiglio's claims because they are in essence seeking to undo the tax deed. Miller also asks the Court to dismiss for failure to state a claim under Rule 12(b)(6) on the basis that his actions do not qualify as "debt collection" under the FDCPA because he was only

seeking to enforce the possessory interest of his client and did not request any monetary relief. Miller also argues that the Complaint fails to allege sufficient facts against him. For the following reasons, Miller's motion to dismiss is granted.

### A.      12(b)(1) Challenge

In order to bring a claim in federal court, a plaintiff must demonstrate "(1) an injury in fact, which is (a) concrete and particularized and (b) actual or imminent;" (2) the injury is fairly traceable to the challenged action of the defendant; and "(3) it is likely to be redressed by a favorable decision from this court." *See Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 949 (7th Cir. 2005) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). Miller argues that the Bonfiglios have failed to sufficiently plead the elements of standing. The Bonfiglios assert that they properly plead that Miller attempted to evict them from their home by falsely filing an eviction action in the name of a party without interest in the property and that they were forced to retain counsel to defend against that wrongful eviction action. Another court in this district found injury, causation, and redressability properly pleaded in a similar case based on a collection action. *See Grant-Hall v. Cavalry Portfolio Servs., LLC,* 856 F. Supp. 2d 929, 936 (N.D. Ill. 2012) ("The [standing] argument is meritless, as the time and money Plaintiffs spent contesting the state court actions already had been incurred by the time those actions were dismissed."). The Bonfiglios have similarly sufficiently pleaded standing and may proceed against Miller.

Miller also argues that this Court does not have jurisdiction to hear the claim against it because the Bonfiglios are attacking the state court judgment on the tax deed, and therefore the case is barred by the *Rooker-Feldman* doctrine. *Rooker-Feldman* "precludes lower federal court jurisdiction over claims seeking review of state court judgments." *Kelley v. Med-I Solutions,*

*LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)).  "The doctrine applies not only to claims that were actually raised before the state court, but to claims that are inextricably intertwined with state court determinations." *Id.*  Whether the federal claim is "inextricably intertwined" "hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *See Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).  Once a court has determined the claim is "inextricably intertwined" with the state court judgment, the court must decide whether the plaintiff had a "reasonable opportunity to raise the issue in state court proceedings." *Id.*  If so, the court should not exercise jurisdiction. *Id.*

Miller argues that *Rooker-Feldman* bars suits that seek recovery for misrepresentations made in state court proceedings.  That is too broad a characterization of the case law.  *See Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) (finding *Rooker-Feldman* barred claim that debt collector misrepresented creditor's identify in garnishment proceeding because the injury was tied to the garnishment proceeding); *Kobilka v. Cottonwood Fin. Wisc.*, No. 14-cv-268-wmc, 2015 WL 1137471, at *4 (W.D. Wisc. Mar. 12, 2015) (finding *Rooker-Feldman* barred review of garnishment proceeding).  *Rooker-Feldman* does not allow a district court to review claims attacking state court judgments, but the Seventh Circuit has recently cautioned that *Rooker-Feldman* "does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff."  *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014).

The Bonfiglios reply that this is not a challenge to a state court judgment.  They argue that the claim against Miller centers on the eviction action and there was no state court eviction judgment—Miller dismissed the eviction proceeding after the Bonfiglios retained counsel.

Indeed, the Bonfiglios are not seeking to undo the dismissed eviction action—they plead that Miller lied during the eviction process, including misrepresenting the status of the debt, the true plaintiff, and the nature of Citi and Region Bank's security interest in the property, and by directing the sheriff to unlawfully evict the Bonfiglios. While some of the alleged actions are in court, others are "out-of-court" events that caused injury that may be addressed by this Court, and none of the Bonfiglios' claims against Miller seek to undo a state court judgment. *See Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("[I]f a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction—but only to the extent of dealing with that injury."). Because the Bonfiglios need not (and indeed do not) rely on a state court judgment for this claim, it is not barred by *Rooker-Feldman*. *See Kelley*, 548 F.3d at 605 (distinguishing claim based on debt collector's misrepresentations with claim based on result of state court judgment).

Because the Court has found that the claim is not barred by *Rooker-Feldman*, it need not address Miller's arguments against the "reasonable opportunity" exception to this doctrine. *See id.* at 607 (explaining that the "reasonable opportunity" exception is of "questionable viability").

In its reply brief, Miller argues that *res judicata* and claim preclusion bar the Bonfiglios claims because an "Agreed Dismissal Order" resolved the eviction action. Arguments made only in reply are waived. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010). However, even if the Court were to consider this argument, it must fail. As discussed above, the Bonfiglios' action against Miller is not an attempt to undo the eviction proceedings and the validity (or not) of an agreed order dismissing that action is not before the Court at this time.

Miller's motion to dismiss on the basis that this Court lacks subject-matter jurisdiction to hear the Bonfiglios' claims against it is denied.

**B.      12(b)(6) Challenge**

Miller also seeks dismissal of the FDCPA claim on the basis that the eviction action

sought possession only and therefore does not qualify as "debt collection" under the FDCPA.

The Bonfiglios respond that they are seeking relief for Miller's false representations during the

eviction action, and therefore the FDCPA applies irrespective of whether Miller was seeking

"possession only."

The FDCPA defines "debt" as:

any obligation or alleged obligation of a consumer to pay money arising out of a
transaction in which the money, property, insurance, or services which are the
subject of the transaction are primarily for personal, family, or household
purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).  A debt collector is defined as:

any person who uses any instrumentality of interstate commerce or the mails in
any business the principal purpose of which is the collection of any debts, or who
regularly collects or attempts to collect, directly or indirectly, debts owed or due
or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  Communications from a debt collector must be made in connection with

the collection of a debt to be covered by the FDCPA.  *See Gburek v. Litton Loan Servicing, LP*,

614 F.3d 380, 384–86 (7th Cir. 2010) (explaining that although the communication need not

contain an explicit demand for payment, the communication must be "made specifically to

induce the debtor to settle her debt").

At issue here is whether Miller's actions as pleaded—filing the eviction complaint on

behalf of Regions Bank, refusing to give any information to the Bonfiglios when they appeared

in court to contest the eviction, and then dismissing the eviction, claiming that the naming of

Regions Bank was a scrivener's error, Compl. ¶¶ 40, 41, 50—state a claim for debt collection

under the FDCPA. The Complaint alleges violations of §§ 1692d, 1692e, 1692f, and 1692j.[3] The Parties do not differentiate between the sections in their arguments. The Bonfiglios cite no cases for their position that false representations made during eviction proceedings are considered debt collection under the statute. Miller, however, has pointed the Court to several cases holding that when an eviction suit aims only to enforce a possessory interest and is not an attempt to collect a debt, the FDCPA does not apply. *See Gulley v. Pierce & Assocs.*, No. 10 C 573, 2010 WL 5060257, at *3 (N.D. Ill. Dec. 6, 2010) (dismissing FDCPA claim based on eviction suit against third party to enforce possessory interest); *Galuska v. Blumenthal*, No. 92 C 3781, 1994 WL 323121, at *4 (N.D. Ill. June 26, 1994) (refusing to characterize action to surrender adverse possession of real property to its legal owner as debt collection under the FDCPA). The Court agrees that the facts as pleaded here point to the same result. Miller sought to enforce the possessory interest of Regions Bank (or another owner of the property) by filing the eviction action. *See* Compl., Ex. M. The Bonfiglios' loan stayed with Citi, having been converted from an *in rem* interest to an *in personam* interest against them when the tax deed issued. The eviction proceeding was not instigated to collect on that debt. *See Gulley*, 2010 WL 5060257, at *3 ("As was the case in *Galuska*, the eviction suit at issue in this case was designed only to wrest possession of property, not collect a debt." (citation omitted) (internal quotation marks and alteration omitted)). Miller's actions related to the eviction proceeding do not qualify as debt collection for the purposes of the FDCPA.[4]

---

[3] Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692e prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. And Section 1692j makes it unlawful to furnish certain deceptive forms. 15 U.S.C. § 1692j.

[4] In its reply, Miller argues that the Bonfiglios may not rely on the Sheriff's Notice of Eviction, attached to the Complaint at Exhibit O, as a basis for FDCPA liability against it and accuses the Bonfiglios of

The Bonfiglios argue alternatively that, at the very least, the Complaint pleads that Miller failed to conduct an independent evaluation of the litigation because even a cursory review of the chain of title would reveal that Regions Bank was not the correct party in interest and this is actionable under the FDCPA. The Bonfiglios cite a recent district court case for the proposition that lawyers may be sued under the FDCPA, but that case is distinguishable because the lawyers were clearly engaged in debt collection. *See Typpi v. PNC Bank, N.A.*, 13 CV 3930, 2014 WL 296035, at *6 (N.D. Ill. Jan. 27, 2014) (refusing to dismiss claims against lawyers based on state court filings attempting to collect debt). The Bonfiglios also argue that "covered activities under the FDCPA may include the duty of an attorney to independently evaluate a case for litigation," citing *Nielson v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002). Doc. 41 at 19. That case in relevant part deals with the question of whether a debt collection letter issued by an attorney was "from" that attorney, thus making the attorney involved in the debt collection. 307 F.3d at 635. Again, the debt collection aspect of that case was not in dispute and *Nielson* does not stand for the broad proposition that a failure to properly evaluate a case for litigation is somehow actionable under the FDCPA.

Because the Court dismisses Count V against Miller, it need not consider Miller's argument, stated without elaboration, that the Bonfiglios do not plead facts sufficient to state a claim under 12(b)(6).

## II.     Green Tree's Motion to Dismiss

### A.     Breach of Contract (Count I)

Green Tree argues that, as the loan servicer, it is not a party to the mortgage agreement and therefore cannot be held responsible for any alleged breach. It argues that, in addition, it was

---

seeking to impermissibly join an unrelated party. The Bonfiglios have not had an opportunity to respond to this new argument and, as discussed above, arguments made only in reply are waived. *See Dexia Credit Local*, 629 F.3d at 625.

not involved with the loan as of the time of the alleged breach through the non-payment of the property taxes.  The Bonfiglios assert that loan servicers may be held liable for breach of contract when they breach their obligations under mortgage agreements and Green Tree breached the contract by failing to properly service the loan.  For the reasons discussed below, Green Tree's motion to dismiss Count I is denied.

Green Tree asserts that it is not a party to the mortgage agreement and therefore cannot be held liable for breach of contract for failing to redeem the property taxes.  "Under Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, or by an intended third-party beneficiary of the contract."  *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001) (citations omitted).[5]  Privity is "a mutual or successive relationship to the *same rights of property*" that places "the assignee in the shoes of the assignor."  *Id.*  Privity may arise by operation of law or voluntary transfer of rights.  *Id.*

The Bonfiglios plead that they "had a valid and enforceable mortgage loan contract, as modified by the deferment agreement (hereinafter 'contract'), with Citi as the creditor and Green Tree as the servicer."  Compl. ¶ 57.  They further plead that Citi is liable to them for the actions of Green Tree as its servicer.  *Id.* ¶ 58.  They allege that Green Tree (and Citi) breached the mortgage contract by seeking to wrongfully evict them, failing to acknowledge and credit their payments, purchasing the deed to the property, and failing to redeem the taxes.  *Id.* ¶¶ 61–67.

However, the mortgage agreement attached to the Complaint reflects the Bonfiglios and Citi as the only two named parties.  Compl., Ex. A; *see Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006) (where an exhibit attached to a complaint contradicts the pleadings, the exhibit controls).  Courts in other jurisdictions have not approved breach of contract claims

[5] Neither Party makes any argument as to the governing law for the mortgage contract.  Per Section 13 of the mortgage attached to the Complaint as Exhibit A, the applicable law "shall be the laws of the jurisdiction in which the Property is located," i.e., Illinois.

against loan servicers when those servicers were not parties to the contracts. *See, e.g., Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1052 (N.D. Cal. 2013) (mortgage servicer cannot be held liable for breach of contract when not a party to the mortgage agreement); *Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 533 (W.D. Pa. 2012) (examining servicing documents and mortgage note to conclude that servicer was not a party to the mortgage contract and therefore dismissing breach of contract claim).

The Bonfiglios assert that Seventh Circuit case law supports a cause of action for breach of contract against a loan servicer. Like Green Tree's cases above, however, these cited cases look to whether the loan servicer has obligations under the relevant contract. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560–61 (7th Cir. 2012) (loan servicer was signatory to loan modification agreement); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 690-92 (7th Cir. 2011) (loan servicer had assumed loan from prior owner, including specific obligations to provide timely and accurate information directing payments in the event of a transfer); *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 645 (7th Cir. 2007) (servicer was partial assignee of mortgage contract and could therefore be sued for breach of the terms of that contract that had been assigned to it); *Kesten v. Ocwen Loan Servicing, LLC*, No. 11 C 6981, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) (following *In re Ocwen*).

Green Tree is not a party to the mortgage agreement and the plain terms of the mortgage agreement do not deal with loan servicing. The Bonfiglios have not shown or argued that Citi assigned any part of the mortgage agreement to Green Tree or otherwise placed Green Tree in privity with it, such that it should be considered a party to the mortgage agreement. However, although not specifically articulated, the Bonfiglios seem to be arguing that Green Tree's servicing obligations are somehow implicated in the mortgage contract, "as modified by the

deferment agreement." *See* Compl. ¶ 57. In support of this, the Bonfiglios' Complaint cites to an August 13, 2012 letter from Citi stating that the taxes were deferred (Ex. C), a November 19, 2013 letter from Green Tree "deferring all past due principal and interest to the scheduled maturity date" (Ex. I), and a December 12, 2014 loss mitigation letter from Green Tree (Ex. K). Neither party has addressed whether these later documents form a "deferment agreement" and whether that "deferment agreement" modifies the mortgage agreement or otherwise creates an enforceable contract between Green Tree and the Bonfiglios. Because the Court must evaluate a motion to dismiss in the light most favorable to the plaintiff and ask "whether any set of facts consistent with the complaint would give [the plaintiff] a right to recover, no matter what the legal theory," *Kesten*, 2012 WL 426933, at *7 (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)), the Court cannot say at this juncture that the Bonfiglios cannot establish some sort of contract between themselves and Green Tree that would support a claim of breach. Therefore, Green Tree's motion to dismiss Count I on this basis is denied.

Green Tree further argues that, even if it is considered a party to the contract, it cannot be held responsible for any alleged breach because it did not promise to redeem the taxes and did not fail to pay the taxes—in fact, it became the loan servicer after the redemption period expired and the tax deed had issued. It is true that in order to state a claim for breach of contract, a plaintiff must allege the existence of a valid and enforceable contract, his or her own performance, a breach of that contract by the defendant, and damages. *See Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 979 (N.D. Ill. 2008) (citing Illinois contract law). The Bonfiglios allege breaches beyond the failure to redeem the taxes, however, including Green Tree's alleged failure to credit their mortgage payments and its efforts to evict them. Compl. ¶¶ 61–67. These purported breaches occurred after Green Tree's involvement with the loan.

Green Tree's motion to dismiss Count I is denied.[6]

### B.     Fraudulent Misrepresentation (Count II) & ICFA (Count III)

Green Tree moves to dismiss the Bonfiglios' claims against it for fraudulent

misrepresentation (Count II) and violation of ICFA (Count III) on the basis that the claims are

insufficiently pleaded under Rule 9(b) because the Complaint lumps Green Tree's actions

together with Citi.  Green Tree also argues that the Bonfiglios fail to allege specific

misrepresentations by Green Tree or harm.  Green Tree additionally argues that any claim based

on concealment should be dismissed because the Bonfiglios did not allege a special relationship

that would create a duty to disclose.  Because the fraud claims are sufficiently pleaded, Green

Tree's motion to dismiss Counts II and III is denied.

In support of their claim for fraudulent misrepresentation (Count II), the Bonfiglios allege

that Green Tree (and Citi) misrepresented that they redeemed the taxes and deferred payment to

the end of the loan, curing all existing defaults "notwithstanding the fact that no mortgage

existed," charged the Bonfiglios for the (unpaid) amount of taxes, sent "deceptive letters and

mortgage statements," filed an eviction action in the name of Regions Bank, and misrepresented

that they held a valid interest in the property while inducing the Bonfiglios to continue making

payments on the unsecured loan.  Compl. ¶¶ 70–75.  The Bonfiglios also allege that Citi and

Green Tree "conceal[ed] these misrepresentations" by filing the eviction action in the name of

Regions Bank, with a scheme of defrauding and evicting the Bonfiglios from the property in

order to collect on the sale of the property, "as well as seek to collect any additional amounts

---

[6] In a footnote, Green Tree argues that the Bonfiglios cannot maintain their breach of contract claim and FDCPA claim at the same time, because if the loan was in default, then the Bonfiglios cannot assert breach and if the loan was not in default, then Green Tree cannot qualify as a debt collector under the FDCPA.  This argument is not well developed and the Court cannot assess any purported default on the part of the Bonfiglios because the contours of the contract have not been established at this point in the proceedings.

from Bonfiglio personally." *Id.* ¶¶ 81, 83.  The Bonfiglios further allege that Citi and Green Tree:

> had a duty to disclose that (a) they did not pay the amount to redeem the taxes; (b) that the mortgage loan was not and could not be deemed current due to the tax sale; (c) that the subject mortgage had been extinguished by the tax sale; (d) that Citi had purchased the deed; (e) had charged Bonfiglio and the subject loan the amount required to redeem the taxes, but did not redeem the taxes; (f) that Citi was seeking to evict Bonfiglio based on the deed it purchased; and (g) that Citi had filed the eviction notice in the name of Regions Bank.

*Id.* ¶ 84.

In support of the ICFA claim (Count III), the Bonfiglios plead that Citi and Green Tree engaged in unfair and deceptive practices in their attempts to collect the debt by: never investigating and answering the Bonfiglios' inquiries and disputes about the servicing of the debt, maliciously trying to evict them when they were not in default and illustrating "an industry-wide practice of deceptively seeking to evict borrowers without sufficient notice," charging them for amount of the unpaid taxes, and representing to them various untruths, including that the taxes had been paid, the loan declared current, and mortgage payments were due "after the mortgage loan had been terminated." *Id.* ¶¶ 87–96.

Green Tree first moves to dismiss these two fraud claims as insufficiently pleaded under Rule 9(b)'s heightened pleading standard on the basis that the Complaint impermissibly groups it with Citi, without specifying what actions and words are attributable to each.  In order to state a claim for fraud, a plaintiff must allege the "who, what, when, where, and how" of the alleged fraud.  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).  For fair notice, "the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 778 (7th Cir. 1995) (citation omitted) (internal quotation marks omitted).  The Bonfiglios respond that Green Tree's

specific actions are detailed in the Complaint's initial thirty-nine paragraphs and, in any event, Green Tree has notice of the specific claim against it. Although the Court agrees that the Bonfiglios grouping of Citi and Green Tree together in Counts II and III is not ideal, the details contained in those counts, along with the individual acts alleged in the Statement of Facts, are sufficiently detailed under Rule 9(b). Although each individual date of Green Tree's alleged communications with the Bonfiglios is not contained in the Complaint, the Bonfiglios attach some relevant correspondence to the Complaint and otherwise discuss their communications with Green Tree. Green Tree has been given notice of the chain of events that underlie the fraud claims. *See Daniels v. Bursey*, 313 F. Supp. 2d 790, 810–11 (N.D. Ill. 2004) (although plaintiffs did not identify every one of the 255 communications alleged, under the circumstances the Complaint was "sufficiently specific to comply with Rule 9(b)").[7]

Green Tree further seeks dismissal of Count II (fraudulent misrepresentation) on the basis that the misrepresentations were made by Citi and the Bonfiglios have not stated that they relied to their detriment on any representations by Green Tree. To plead fraudulent misrepresentation, the Bonfiglios must allege "1) a false statement of material fact; 2) known or believed to be false by the party making it; 3) intent to induce the other party to act; 4) action by the other party in reliance on the truth of the statement; and 5) damage to the other party resulting from that reliance." *Wigod*, 673 F.3d at 569 (alterations omitted). Green Tree characterizes the Bonfiglios' fraud claims as premised only on the tax payment issue, but they are in fact pleaded more broadly. The Bonfiglios allege that Green Tree's misrepresentations include those statements, as well as statements: that the property had been sold but the sale did not affect the terms of the mortgage loan, Compl. ¶ 29; that the loan was not current and the Bonfiglios owed

---

[7] Because the Court has denied Green Tree's motion on this basis, it will not discuss the Bonfiglios' argument that they should be excused for group pleading because the necessary information is in Green Tree's exclusive control.

money for the taxes, *id.* ¶¶ 31–32; that the taxes had been redeemed, the deferred amount paid, and the loan deemed current, *id.* ¶ 35; implying that Citi still had a valid mortgage on the subject property, *id.* ¶ 38; in filing the eviction action under a different name, *id.* ¶ 73; and to induce the Bonfiglios "to make payments on an unsecured loan for over two years by making misrepresentations that they continued to hold a valid interest in the subject property," *Id.* ¶ 75. The Bonfiglios have sufficiently pleaded alleged misrepresentations by Green Tree.

Green Tree takes issue with several specific allegations, arguing that these statements are either an offer to take some action in the future, were truthful, or just represent innocent loan servicing activities. *See* Doc. 48 at 6–8. But the Bonfiglios have sufficiently pleaded an alleged scheme to defraud and the particulars of the purported misrepresentations. Challenges to truthfulness or propriety of certain statements must wait for summary judgment. *See Wigod*, 673 F.3d at 569 (overturning district court's dismissal of fraud claim).

Green Tree also argues that any fraud claims based on its alleged "concealment" or "cover up" of information must fail because Green Tree does not have the special relationship with the Bonfiglios that would create the necessary duty to disclose. The Bonfiglios answer that they do not need to plead a special relationship because this duty is an element of the tort of fraudulent concealment, not fraudulent misrepresentation. *See id.* at 571 (listing the elements of the tort of fraudulent concealment, including "a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff"). The Bonfiglios have not pleaded a fraudulent concealment claim and a special duty is not part of either a fraudulent misrepresentation or ICFA claim.

Finally, Green Tree argues that the Bonfiglios have failed to allege harm sufficient to support fraud because they had a continuing contractual obligation to make payments on the

mortgage. While a plaintiff must suffer harm as a direct result of fraud, whether pleaded as fraudulent misrepresentation or an ICFA claim, *see Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1361, 248 Ill. App. 3d 859, 187 Ill. Dec. 634 (1993) (fraud); *Avery v. State Farm Auto. Ins. Co.*, 835 N.E.2d 801, 861, 216 Ill. 2d 100, 296 Ill. Dec. 448 (2005) (ICFA), the Bonfiglios have pleaded other alleged harms, including remaining personally liable on the tax redemption monies, suffering medical injuries related to the stress of eviction and loss of legal title to their house, and hiring a lawyer. This is sufficient to state a harm.

Green Tree's motion to dismiss Counts II and III is denied.

**C.    FDCPA (Count IV)**

Green Tree moves to dismiss the Bonfiglio's FDCPA claims against it on the basis that it is not a debt collector under the statute and, in any event, these allegations do not state a claim for violation of the Act.

**1.    Debt Collector Under the FDCPA**

Green Tree states that it is not a debt collector for the purposes of the FDCPA, but does not elaborate on this argument. The Bonfiglios have pleaded that Green Tree is a debt collector, Compl. ¶ 7, Ex. F (letter from Green Tree stating: "This communication is from a debt collector."), and further assert that Green Tree is a debt collector by law because it acquired the subject loan when the loan was in default and always treated the loan as in default, *see Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (if the party treats a loan as in default when acquired, even if the loan is not actually in default, that party is considered a debt collector under the FDCPA). Green Tree is a debt collector for purposes of the FDCPA.

## 2. Section 1692d

Section 1692d prohibits debt collectors from engaging in harassing, oppressive, or abusive conduct in connection with the collection of a debt. 15 U.S.C. § 1692d. Green Tree argues that its actions in servicing the Bonfiglios' loan do not rise to the level of proscribed debt collection practices, examples of which include: (1) "[t]he use or threat of violence"; (2) "[t]he use of obscene or profane language or language the natural consequence of which is to abuse"; (3) "[t]he publication of a list of consumers who allegedly refuse to pay debts"; (4) "[t]he advertisement for sale of any debt to coerce payment of the debt"; and (5) "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; the placement of calls without meaningful disclosure of the caller's identity." *Id.* To state a claim for a violation of §1692d, the alleged actions should be "similar in seriousness" to these examples. *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 390 (E.D.N.Y. 2011).

The allegations of Green Tree's actions, including refusing to respond to requests for information and failing to provide notice that Citi was the new owner of the property, do not rise to the level of harassing conduct under § 1692d. *See Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769, 773 (7th Cir. 2003) (debt collector's statement to co-worker to tell the debtor "to stop being such a [expletive] bitch" was abusive under § 1692d); *Harrer v. RJM Acquisitions, LLC*, No. 10-cv-7922, 2012 WL 162281, at *6 (N.D. Ill. Jan. 19, 2012) (dismissing claim based on one collection letter that did not include any abusive or harassing language). The Bonfiglios argue that allegations of a threat to collect an improper fee are actionable under § 1692d, citing *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 778 (7th Cir. 2007) ("[A] threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for a

violation of sections 1692d and e"), and Green Tree's misrepresentation of the status of the debt, assessing and attempt to collect fees that were not used to pay the taxes, and falsely declaring the Bonfiglios in default should qualify. The Bonfiglios' cited allegations, however, do not rise to the level of the threat to impose an unlawful or improper fee, as contemplated in the cases cited in *Evory*. *See* 505 F.3d at 777 (threat to impose a daily charge equivalent to 730% interest rate).

Because the Bonfiglios have not alleged actionable harassing or oppressive conduct, Green Tree's motion to dismiss their § 1692d claim is granted.

### 3. Section 1692e

Section 1692e proscribes debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Bonfiglios allege that Green Tree violated this section:

> as a result of its (i) misrepresentation of the status of the debt and subject mortgage; (ii) attempts to collect illegal fees and costs not authorized by law or contract; (iii) misrepresentation of the amounts owed to cure the 'default;' (iv) misrepresentation of the nature of Citi's security interest in the subject property; and (v) declaring the loan in delinquent or default status when [they] had complied with the terms of the contract.

Compl. ¶ 103.

Green Tree seeks dismissal of this claim on the basis that the Complaint merely tracks the language of the statute and does not specify what illegal fees were supposedly collected or who made these supposed misrepresentations and when. But the Bonfiglios have done more than merely recite the elements of the claim. *Cf. Barlow v. Safety Nat'l Cas. Corp.*, 856 F. Supp. 2d 828, 836 (M.D. La. 2012) (plaintiff recited the elements without any factual allegations whatsoever); *Drew v. Rivera*, No. 1:12-CV-9-MP-GRJ, 2012 WL 4088943, at *2 (N.D. Fla. Aug. 6, 2012) (same); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 CV 03760(GBD), 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011) (same); *Derisme v. Hunt Leibert Jacobson, PC*, No.

3:10cv244 (MRK), 2010 WL 4683916, at *7–8 (D. Conn. Nov. 10, 2010) (same). As the

Seventh Circuit has explained, under § 1692e, "[d]ebt collectors may not make false claims,

period." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). The Bonfiglios' Complaint

alleges that Green Tree misrepresented that their debt was in default, that the taxes had been

paid, and the amounts needed to cure the default. This suffices to defeat Green Tree's motion to

dismiss this claim.

Green Tree's motion to dismiss the § 1692e claim is denied.

### 4. Section 1692f

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to

collect or attempt to collect any debt." 15 U.S.C. § 1692f. Some examples of this kind of

conduct include collecting any amount that is not expressly authorized by the agreement or

permitted by law and taking or threatening to take nonjudicial action to effect dispossession of

the property without a present right of possession. *Id.* § 1692f(1) & (6). The Complaint alleges

that Green Tree violated § 1692f by attempting to use "unfair means to collect amounts on the

subject loan," "threaten[ing] foreclosure even after the subject mortgage had been extinguished,"

and "[taking] or threaten[ing] to unlawfully repossess the subject property through the wrongful

eviction." Compl. ¶¶ 104–106. The Bonfiglios also assert that Green Tree told them that they

owed money for the (unpaid) taxes. *Id.* ¶ 32. The Bonfiglios have alleged that Green Tree used

unfair means to collect on the debt and wrongfully commenced a foreclosure action. These

allegations sufficiently state a claim under § 1692f. *See Gritters v. Ocwen Loan Servicing, LLC*,

No. 14 C 00916, 2014 WL 7451682, at *7 (N.D. Ill. Dec. 31, 2014) (refusing to dismiss

complaint that alleged debt collector used unfair means to collect amount not expressly

authorized under the agreement).

Green Tree moves to dismiss, arguing that the invalidity of the mortgage has no bearing on whether Green Tree's attempts to collect were unfair and that the entire basis for the § 1692f claim is that the mortgage was invalid. In support of this argument, Green Tree cites a Seventh Circuit case approving summary judgment for the debt collector on an allegedly forged mortgage, explaining that § 1692f "applies to circumstances where debt collectors attempt to collect a fee for which the contract does not provide, or is not authorized by law," but it "addresses the conduct of the debt collector, not the validity of the underlying debt," therefore, "[t]hat the mortgage may be a forgery has no bearing on the § 1692f analysis." *See Transamerica Fin. Servs.. Inc. v. Sykes*, 171 F.3d 553, 555–56 (7th Cir. 1999) (defendant attempting to collect debt authorized by the agreement not liable under § 1692f). The Bonfiglios' § 1692f claim is directed to Green Tree's alleged actions in collecting on the Citi loan and is broader than a claim that the mortgage was invalid, thus *Transamerica* is inapposite.

Green Tree also argues that it had a right to enforce Citi's interest in the property at the time of the eviction action and therefore cannot have committed unfair acts. Whether Green Tree had a right to enforce Citi's interest in the property and the propriety of Citi's claimed interest are fact questions more appropriate for the summary judgment stage.

Green Tree's motion to dismiss the § 1692f claim is denied.

### 5.     Section 1692j

Section 1692j makes it unlawful to "design, compile and furnish any form knowing that such form would be used to create a false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j. This section was designed to stop a practice known as "flat-rating," where

third-parties sell their letterhead to a creditor (for a per-letter fee) so that a creditor can send its own delinquency letters on that letterhead, creating the impression that a collection agency or other party is now "on the debtor's back." *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 734 (7th Cir. 2004). A defendant must have designed, compiled, and furnished the allegedly deceptive forms to be liable under § 1692j. *Id.*

Green Tree moves to dismiss this count on the basis that the eviction complaint is not a "form" that qualifies under §1692j. The Bonfiglios do not allege that Green Tree designed, compiled, and furnished a form to any other party to deceive them into believing that Green Tree and not the other party was collecting the debt. However, they argue that Green Tree may be liable for the actions of its agent, Miller, who they claim filed paperwork in the eviction action in the name of Regions Bank, thus misleading them as to who was trying to collect on the debt. Whether or not Green Tree can be held liable for the actions of its attorney, as discussed above the actions of Miller in filing the eviction paperwork do not qualify as "debt collection" under the FDCPA. The Bonfiglios have not cited any cases to support their argument that Miller's filing of the eviction action would qualify under § 1692j and their cited cases do not deal with this issue. *See Nielsen*, 307 F.3d at 639–40 (explicitly refusing to decide whether § 1692j liability was appropriate for debt collection letters issued by attorney); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006) (approving vicarious liability under the FDCPA for debt collection companies (whether attorneys or not) working as agents of first debt collector); *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) (revising analysis on debt collection participation and § 1692j, explicitly overruling *Randle v. GC Servs., L.P.*, 25 F. Supp. 2d 849, 854 (N.D. Ill. 1998)). Therefore, because the Bonfiglios do not assert that Green Tree created and furnished a "flat-rating" form and cannot cite any cases to support holding Green

Tree liable under this section for Miller's actions in filing the eviction complaint, Green Tree's motion to dismiss the § 1692j claim against it is granted.

## CONCLUSION

For the foregoing reasons, Miller's motion to dismiss [9] is granted and Green Tree's motion to dismiss [33] is granted in part and denied in part. The § 1692d and § 1692j claims in Count IV are dismissed. Green Tree's motion is otherwise denied. Green Tree is given until October 2, 2015, to answer the remaining allegations of the Complaint.

Dated: September 23, 2015

SARA L. ELLIS
United States District Judge